## BOWEN *et al.* v. CITY OF ATLANTA.

GILBERT, J. 1. The decision in *Glover* v. *City of Atlanta*, 148 *Ga.* 285 (96 S. E. 562), is controlling upon the main issues involved in the present case, and requires a reversal of the judgment.

2. The plaintiffs were not estopped, by reason of any of the facts alleged,

from raising the issue as to the constitutionality of the city ordinance in question. *Sellers* v. *Cox*, 127 *Ga.* 246 (2) (56 S. E. 284).

*Judgment reversed. All the Justices concur.*

No. 4339. OCTOBER 17, 1924. REHEARING DENIED NOVEMBER 22, 1924.

Petition for injunction. Before Judge Bell. Fulton superior court. April 1, 1924.

On April 11, 1922, the general council of the City of Atlanta adopted an ordinance, which was approved by the mayor of the city on the following day, known as the "zoning ordinance" containing the following provision: "For the promotion of the public peace, order, safety, and general welfare and for the further regulation of the use of the residence districts, as shown on the zone map, class R1 or white districts and class R2 or colored districts are hereby established as shown on said zone map. In a class R2 district that is within a dwelling-house or apartment-house district, no dwelling or apartment-house shall be used to house white families. Servants' quarters housing either white or colored families may be maintained, if accessory to and on the same lot with another residence. Provided, that the use existing at the time of the passage of this ordinance of any dwelling or apartment-house for white families or for colored families may be continued." Accompanying the ordinance as a part thereof is a map entitled "Zone Map, Atlanta, Ga."

Mrs. A. M. Bowen and Luther J. Crittle, a negro, filed an equitable petition against the City of Atlanta and Charles J. Bowen, building inspector of the city, which, in addition to the facts above set forth, alleged in substance, that Mrs. Bowen owns a tract of land having a depth of 163.6 feet situated between West Hunter Street and Battle Hill Avenue, fronting 891.8 feet on the west side of Chickamauga Avenue in the City of Atlanta; that this property is classified upon the map attached to said zoning ordinance as "White Race Dwelling House District;" that Mrs. Bowen derived title to the property through the will of her husband, L. F. Bowen, who died on September 14, 1921; that prior to that date persons of color were occupying houses on the east side of Chickamauga Avenue directly opposite the property above mentioned; that the character of the property on Chickamauga Avenue between West Hunter Street and Battle Hill Avenue having become established as a colored people's section or place of residence, and L. F. Bowen, perceiving that it would not be possible to make it a white people's

street and that he would be obliged to sell his lots to persons of color, subdivided the tracts above described into eighteen lots and published a plat of the same carrying the following language: "Choice Property for Colored People, Chickamauga Lots Only $25 cash and $5.00 a month;" that he sold a number of the lots; that houses on two of the lots so sold by him were occupied by negroes long prior to the passage of the ordinance mentioned, and at the time of the filing of the petition; that Mrs. Bowen sold to Crittle, under a bond for title, a lot on Chickamauga Avenue situated between the two houses which had been sold by L. F. Bowen, and occupied by negroes as above stated; that recently Crittle had constructed a dwelling on the lot sold to him, and the same was being occupied by negro tenants; that no white person resides on Chickamauga Avenue between West Hunter Street and Battle Hill Avenue, but every house is occupied by negroes, and this condition existed at the time of the passage of the ordinance above mentioned; that the building inspector of the City of Atlanta, acting under the ordinance, had notified the occupants of the house belonging to Crittle that if they did not vacate the same by 10 o'clock a. m. on February 28, 1924, prosecutions against them would be instituted in the recorder's court of Atlanta, and had stated his intention of prosecuting any other colored persons who might occupy said house; that it is the purpose of the City of Atlanta and its building inspector by such prosecutions to prevent the occupancy of the house belonging to Crittle, as well as any houses constructed upon the lots belonging to Mrs. Bowen, by negroes; that because other houses in the territory surrounding and adjacent to the property of petitioners are occupied by negroes, and because of the impossibility of inducing white people to live among negroes, it will be impossible for them to rent their property to white people; that the portion of said ordinance quoted above violates article 1, section 1, paragraphs 2 and 3, of the State constitution, which provide that protection to person and property is the paramount duty of government and shall be impartial and complete, and that no person shall be deprived of life, liberty, or property except by due process of law; that it violates the fourteenth amendment to the Federal constitution, which declares: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States, and

of the State wherein they reside.  No State shall make or enforce
any law which shall abridge the privileges or immunities of citizens
of the United States; nor shall any State deprive any person of
life, liberty, or property, without due process of law, nor deny to
any person within its jurisdiction the equal protection of the laws;"
that said parts of said ordinance placing petitioner's property in
the white-race zone are null and void, because (a) they are un-
reasonable and unjust, (b) they deprive petitioners of the use and
enjoyment of their property without due process of law, and (c)·
they damage the value of their property without due process of law;
that the act of the building inspector in threatening to prosecute
the tenants of said house and any other negroes who might move
into the same is illegal and injurious to petitioners and deprives
them of their rights under the State and Federal constitutions;
that it will be impossible to ascertain the amount of damages peti-
tioners will suffer if defendants are permitted to carry out their
intentions; and that petitioners are remediless at law.

The prayers are, that the defendants be restrained by injunction
from prosecuting persons of color who may occupy the house belong-
ing to Crittle or who may now or hereafter occupy any other house
now situated upon or which may be built upon the property of
Mrs. Annie Mae Bowen; that section 20 of said ordinance and all
parts of said ordinance seeking to segregate white and colored per-
sons or separate the districts in which white and colored persons
may reside be declared unreasonable, unconstitutional, null, and
void; that so much of said ordinance and the zone map accompany-
ing the same as places petitioners' property in the white-race zone
be declared unreasonable, unconstitutional, null and void; that the
city and its building inspector be enjoined from refusing to issue
to Mrs. Bowen, or to any person who may apply for the same, a
permit to build a house or houses on the property described and
belonging to her, to be occupied by colored persons, when said
permit would be legal and unobjectionable on any other ground.

The defendants demurred to the petition, on the grounds:  (1)
it does not set forth a cause of action; (2) it seeks to enjoin a
penal ordinance upon the ground that it is unconstitutional, illegal,
and unreasonable, and a court of equity will not restrain the prose-
cutions as prayed, especially as it does not appear that any hard-
ships will be suffered by the plaintiffs except that of defending the

prosecution; (3) that said ordinance is supported by an act of the legislature of which the court will take cognizance; that said ordinance and said act are not illegal upon any of the grounds set up; that the ordinance is not open to attack upon the ground of being unreasonable and unjust, because it was passed by virtue of an 'act of the General Assembly; and that said ordinance is not violative of the constitutional provisions as alleged in the petition; that the attacks made upon said ordinance are attacks upon the act of the legislature mentioned, and said attacks are not good as against said act or any ordinance passed thereunder; (4) that there is a misjoinder of causes of action, in that the action on the part of plaintiff Crittle has no connection with the cause of action of plaintiff Bowen, except as to the one lot he purchased; (5) that there is a misjoinder of parties plaintiff, for the same reason; (6) that, except as to the Crittle lot, plaintiff Bowen shows no injury or adverse result from said ordinance, it not appearing that defendants have taken any position with reference to the lots other than they are owned by plaintiff Crittle, and as to all the lots the petition is premature; (7) said petition contains an action for injunction in the form of a mandamus whereby defendants would be enjoined from refusing building permits to plaintiff on the land described for building houses for colored people.

In their answer the defendants pleaded that the relief sought should not be granted, because the defendant Crittle had first applied for a permit to build a house to be occupied by negroes, which was refused; that afterwards he made application for permit to build a house to be occupied by white people, which was granted, and that the house was, upon completion, rented to negroes; that he does not come in with clean hands, and, having accepted the law, having pretended to comply with the same, and having violated his application and permit, he is estopped from seeking to enjoin portions of the ordinance; that the City of Atlanta has suffered because owners of property in many instances would permit the erection of stores in residence sections or would sell property located in white-residence sections to negroes, and in this manner destroy the value of the entire district; that in 1920 and 1921 the General Assembly passed acts providing for the adoption by the city of a zoning plan; that the act passed in 1921 provided, "in the interest of the public health, safety, order, convenience, comfort, prosperity

or general welfare," that the General Council of the city was empowered, in any district set aside for residence purposes, to "further classify the use thereof and to provide therein the class or classes of residents to be housed therein, and to provide such other and similar regulations and restrictions as shall secure the peace and good order of the city and the residents thereof;" that the question of adopting the zoning ordinance and map was given wide publicity, and various objectors were heard upon the same; that neither of the plaintiffs made any objection to the placing of the land described in white-residence district, and the petition is without equity, because petitioners did not object prior to the adoption of the ordinance; that the map adopted in connection with the ordinance shows a large section devoted to the use of negroes; that to place negroes in a section with white people breeds disorder; that the property involved is located in a section of the city devoted to use as homes for white people; that the plaintiff, without regard to the rights and desires of her neighbors, is seeking to put negroes in this section, and that the ordinance in question does not discriminate against any block of property or the property owners in any particular block, but, by general zoning or districting of the entire city, undertakes to treat all alike and to give all like uses of their property subject to the use established by the zoning ordinance.

The court refused to grant the injunction prayed, and error was assigned upon that judgment.

*Mitchell & Mitchell*, for plaintiffs.

*J. L. Mayson* and *J. M. Wood*, for defendants.